## THE RICHMOND.

### (District Court, E. D. New York.   December 8, 1913.)

SALVAGE (§ 17*)—SALVAGE SERVICES—RIGHT TO RECOVER.

A steamer lying in New York harbor, on finding fire in a cargo space filled with lumber, blew alarm signals to call the fire boat, which caused libelant to swing his own tug alongside.  The captain of the steamer did not wish libelant's services, but permitted libelant to pump water into a cargo port in the side of the vessel from which dense smoke appeared. This water, because of the peculiar construction of the ship, did little or no good.  The tug, however, was not compelled to leave and supplied water at what appeared to be a point of danger for nearly an hour before the fire boat appeared.  *Held*, that the tug rendered a salvage service for which libelant was entitled to recover $250.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. § 30; Dec. Dig. § 17.*]

In Admiralty.   Libel by Charles McNeill and others against the steamship Richmond, etc., to recover for salvage services.   Libelant held entitled to an award of $250.

Foley & Martin, of New York City, for libelants.
Haight, Sandford & Smith, of New York City, for claimant.

CHATFIELD, District Judge.   The Florence was one of several tugs called to the help of the steamer Richmond, which discovered a fire in a cargo space filled with lumber while preparing to be taken to a berth at about 6:30 a. m. on the morning of February 26, 1913. Various settlements have been made with other libelants and salvors, but certain peculiar facts have led to the trial of this claim.

Some of the tugs were alongside ready to assist in towing the boat. One of these was sent by the captain of the Richmond to get the fire boat, but it was an hour before a telephone was reached and the fire boat arrived.   This tug and the Richmond blew alarm signals also to call the fire boat and in so doing aroused every tug in the neighborhood.

The steamer is a converted passenger boat, and her captain did not wish salvage services, but hoped to get along with his own equipment and with the fire boat.   He did, however, take a line of hose from one tug and put it down a hatch over the cargo of lumber in which the fire was located.   He also knew of the presence of the other tugs and compelled some of them to cease what were apparently useless efforts at points where no danger could be reached.

The fire boat was busy several hours, finding the fire stubborn and deep seated.   Much smoke was pouring out at the arrival of the fire boat, and subsequently the Richmond was moved over on the flat where she could be filled without danger of sinking in deep water.   In so doing flames broke out, and a different tug (which had been kept by the captain of the Richmond from throwing water previously) was used to put out this fire in the deckhouse.

The Florence had arrived soon after the first alarm of fire and placed her stem against the side of the steamer alongside the tug from which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the line of hose had been taken aboard. The Florence used an ordinary fire hose and nozzle which was directed by a deck hand on her bow. This stream of water was trained into a square cargo port or steel door in the side of the vessel and through which the hose from the other tug led into what appeared to be dense smoke. As a matter of fact, the space into which the Florence threw her stream of water was what had been formerly a deck space or passageway along the port side of the cabin and engine trunkway. No changes had been made to this passageway in rebuilding the boat, and the water from the Florence struck the steel sides or walls with sufficient force to prevent the crew from going fore and aft on that side of the boat. The only help given by this stream of water was to keep down the temperature, if the fire had any effect on the plates of the vessel's decks and walls at that point. None of this water seems to have gotten into the hold or directly on the fire. The captain of the Richmond and the engineer both testify that they tried to stop the stream of water from the Florence, as the crew could not get through this passageway without getting wet or knocked over, and that the Florence would not stop. There was so much smoke, and the situation until the fire boat arrived seemed likely to prove so serious, that these statements cannot be taken as showing the situation for the whole hour.

It would seem that the captain could have compelled the Florence to leave or have caused her hose to be taken to some point where it could be used advantageously, if he had been trying merely to stop the useless playing of water into the passageway referred to, or had been so sure that no assistance was needed and that the vessel could either subdue the fire or let it burn until the fire boat arrived, as he now says was his deliberate intention.

The presence and efforts of the Florence would have proved useful in case things did not turn out as the captain of the steamer expected. She answered alarm signals which justified her in offering her assistance. She supplied a stream of water at what looked like a point of danger and where water appeared to be useful, for something like an hour before the controlling factor in the situation, viz., the fire boat, appeared.

The element of uncertainty in the amount of benefit offered and rendered must always be anticipated by a boat attempting to perform salvage services, just as much as the element of risk may prove to have been negligible, even if there were an appearance of danger when aid is first offered.

From these standpoints, the Florence rendered what should be called a salvage service, which proved to be of little use and to have been made almost ridiculous through the unusual construction of the steamer. Her reward therefore should be based upon her readiness and willingness and the amount of her effort, considered in the light of the danger which she would have prevented if other aid had not appeared.

The Richmond was not bound to accept the offer of salvage service so far as the vessel was concerned, but a captain should not be allowed, when manifestly in a position of great danger, to loudly protest that there is no danger, to imperil both his boat and his cargo by

the assumption that he is able to prevent or take care of the threatened danger without help, and to avoid payment of the services which, while protesting, he accepts, unless the circumstances are such that appearances justify the captain at the time and are of themselves sufficient notice to those offering aid, to warn them that they will not be sustained by the courts in forcing a useless offer of help upon some one who does not desire or need to be helped.

But in the present case the Richmond was calling for assistance, and yet the captain's conclusion as to his wishes and wants at the time of the fire must be viewed in the light of results, which indicate that additional help was not necessary and that the fire boat did finally arrive to render the services for which she was called. Added to this is the fact that the damage to the cargo from the fire was slight and that the most of the expenditure was for repairs to the vessel made necessary by efforts to reach the fire and for resurfacing or redressing the lumber cargo. These expenses would not have been decreased, whether the help came from one source or another.

Upon the above statement of fact, it must be concluded that the Florence is not entitled to a great award for actual accomplishment, nor for persistence in rendering service, even assuming that her captain did not hear or receive the intimation from the Richmond that they wished the stream from the Florence to stop before the arrival of the fire boat. The Florence is entitled to an award for the salvage service offered and for attempted help furnished and received in a situation justifying such offer with the possibility of efficient service so long as danger existed.

An award of $250 to the Florence will be given, one-third to the crew and two-thirds to the owner.